UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| PAMALA DUPSLOFF, | |
|---|---|
| Plaintiff | Case No. 5:17-cv-01274-GJS |
| v. | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | |

## I. PROCEDURAL HISTORY

Plaintiff Pamala Dupsloff ("Plaintiff") filed a complaint seeking review of the decision of the Commissioner of Social Security denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties filed consents to proceed before the undersigned United States Magistrate Judge [Dkts. 20 and 21] and a joint stipulation addressing disputed issues in the case [Dkt. 18 ("Jt. Stip.")]. The matter is now ready for decision. For the reasons discussed below, the Court finds that this matter should be affirmed.

## II. ADMINISTRATIVE DECISION UNDER REVIEW

Plaintiff filed an application for SSI in August 2012, and an application for DIB in April 2013. [Dkt. 14, Administrative Record ("AR") 12, 60, 110, 177-86,

187-93.] Both applications alleged disability beginning on October 1, 2011. [AR 12, 177, 187.] Plaintiff's applications were denied at the initial level of review and on reconsideration. [AR 12, 114-18, 121-25.] A hearing was held before Administrative Law Judge Joseph P. Lisiecki III ("the ALJ") on January 19, 2016. [AR 26-58.]

On January 29, 2016, the ALJ issued an unfavorable decision applying the five-step sequential evaluation process to assess disability [AR 12-19]. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset date [AR 14]. At step two, the ALJ determined that Plaintiff suffered from the severe impairments of degenerative disc disease of the cervical and lumbar spine, cervical and lumbar musculoligamentous strain, radiculopathy, patellofemoral pain syndrome in the bilateral knees, status-post carpal tunnel release surgery, obesity, right rotator cuff tear, and left shoulder tumor [AR 15]. The ALJ determined at step three that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in Appendix I of the Regulations, ("the Listings") [AR 16]. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1. Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a range of sedentary work (20 C.F.R. § 404.1567(a)), including the ability to lift and/or carry up to 10 pounds occasionally and less than 10 pounds frequently, stand and/or walk a total of two hours and sit a total of 6 hours in an 8-hour workday with normal breaks and the ability to alternate positions between sitting and standing for 3 to 5 minutes at will, occasionally engage in postural maneuvers, and frequently perform gross and fine manipulation bilaterally [AR 16]. The ALJ further found that Plaintiff was precluded from performing work above shoulder level bilaterally, crawling, using ladders, ropes, and scaffolds, and working around dangerous machinery and unprotected heights [AR 17]. At step four, the ALJ determined that Plaintiff was able to perform her past relevant work as an order clerk, as that job

was actually performed by Plaintiff and as generally performed in the national economy [AR 18-19].

The Appeals Council denied review of the ALJ's decision on April 26, 2017. [AR 4-6.] This action followed.

Plaintiff raises the following issues challenging the ALJ's findings and determination of non-disability:

1. The ALJ erred in failing to resolve an inconsistency between the vocational expert's testimony and the reaching demands of the order clerk job. [Jt. Stip. at 4-7, 14-17.]
2. The ALJ erred in rejecting Plaintiff's subjective symptom testimony. [Jt. Stip. at 17-22, 30-32.]

Plaintiff requests reversal and remand for payment of benefits or, in the alternative, remand for further administrative proceedings. [Jt. Stip. at 32-33.] The Commissioner asserts that the ALJ's decision should be affirmed, or in the alternative, remanded for further development of the record if the Court finds error in the ALJ's consideration of the record. [Jt. Stip. at 33.]

### III. GOVERNING STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012) (internal citation omitted). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted).

The Court will uphold the Commissioner's decision when the evidence is

3

susceptible to more than one rational interpretation. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "inconsequential to the ultimate nondisability determination, or if despite the legal error, the agency's path may reasonably be discerned." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal quotation marks and citations omitted).

## IV. DISCUSSION

### A. Vocational Expert's Testimony

Plaintiff contends the ALJ erred by relying on the testimony of the vocational expert ("VE") that Plaintiff could perform her past relevant work, because the VE's testimony conflicted with the Dictionary of Occupational Titles ("DOT"). [Jt. Stip. at 4-7, 14-17.]

At step four of the five-step sequential analysis, a claimant has the burden of proving that she cannot return to her past relevant work, either as actually or generally performed in the national economy. *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001); 42 U.S.C. §§ 404.1520(f), 416.920(f). However, the ALJ has a duty to make factual findings to support a conclusion of non-disability at step four. *See Pinto*, 249 F.3d at 844. The ALJ can meet this burden by comparing the physical and mental demands of the past relevant work with the claimant's RFC. *Id.* at 844-45.

To ascertain the requirements of occupations as generally performed in the national economy, the ALJ may rely on VE testimony or information from the DOT. *Pinto*, 249 F.3d at 845-46. Should an "apparent or obvious" conflict arise between a VE's testimony regarding the claimant's ability to perform a certain job and the

4

DOT's description of that job, "the ALJ must ask the [VE] to reconcile the conflict" and must determine whether the VE's explanation is reasonable before relying on the VE's testimony. *Gutierrez v. Colvin*, 844 F.3d 804, 807-08 (9th Cir. 2016); *see Massachi v. Astrue*, 486 F.3d 1149, 1153-54 (9th Cir. 2007) (explaining that neither the DOT nor VE evidence "automatically trumps when there is a conflict" and that if the ALJ determines that a conflict exists, "the ALJ must then determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the [DOT].").

At the hearing before the ALJ, the VE testified that Plaintiff had past relevant work as a customer order clerk (DOT 249.362-026), which is a sedentary job. [AR 51.] The ALJ asked the VE to assume the existence of a hypothetical person who, among other things, was precluded from "work above shoulder level bilaterally." [AR 51-52, 54.] The VE stated that that the person would be able to perform work as an order clerk. [AR 51-52, 54.] Later, the ALJ asked the VE if her testimony was consistent with the DOT and its companion publications and the VE confirmed that it was, except for two restrictions that were unrelated to the above the shoulder work limitation. [AR 57.]

Plaintiff contends that the reaching demands of the order clerk job exceed her abilities. [Jt. Stip. at 4-7, 14-17.] The DOT classifies the order clerk job as requiring "frequent reaching," which is defined as existing from one-third to two-thirds of the time. DOT 249.362-026. Plaintiff argues that, because reaching means "extending the hands and arms in any direction," the order clerk job would require "the ability to reach frequently overhead and in any other direction," which conflicts with Plaintiff's "overhead reaching" limitation. [Jt. Stip. at 6 (citing SSR 85-15, 1985 WL 56857, at *7).]

There is no apparent or obvious conflict between the VE's testimony and the DOT's job requirements requiring resolution by the ALJ. First, Plaintiff misstates the ALJ's RFC assessment. Plaintiff argues that the ALJ found that Plaintiff was

5

precluded from performing "any overhead reaching" bilaterally [Jt. Stip. at 6-7], but the ALJ actually found that Plaintiff was precluded from performing "work above shoulder level bilaterally." [AR 16, 51-52, 54.] A limitation to no "overhead reaching" is distinguishable from a limitation to no "work above shoulder level." *See*, *e.g.*, *Hopkins v. Berryhill*, No. EDCV 15-02423 AJW, 2017 WL 923902, at *3 (C.D. Cal. Mar. 6, 2017) ("In assessing plaintiff's physical RFC, the ALJ could have specified that plaintiff was limited to 'occasional overhead reaching bilaterally,' but instead she limited plaintiff to 'occasional overhead work bilaterally,' a difference that suggests a distinction in meaning."); *see also Cruz v. Colvin*, No. SACV 12-1143-JPR, 2013 WL 4082714, at *4 (C.D. Cal. Aug. 13, 2013) ("'Overhead work' can reasonably be interpreted to mean jobs performed almost constantly overhead, such as a window washer, tree trimmer, or wall washer."). Thus, there was no apparent or obvious conflict between the VE's testimony and the DOT's description of the order clerk job as requiring frequent reaching.

Even if a limitation to no "work above shoulder level bilaterally" is synonymous with a limitation to no "overhead reaching bilaterally," "not every job that involves reaching requires the ability to reach overhead." *Gutierrez*, 844 F.3d at 808 (relying on the DOT and common knowledge to hold that no apparent or obvious conflict existed between the VE's testimony a claimant who could not reach above shoulder level with her dominant right arm could still perform the DOT job of cashier, which requires "frequent reaching"); *see Ballesteros v. Colvin*, No. CV 15-0543-JPR, 2016 WL 3381280, at *15 (C.D. Cal. June 13, 2016) ("[J]ust because the term 'reaching' includes extending the arms in 'any' direction – such as up, down, out, right and left, -- that does not mean that a job that involves reaching necessarily requires extending the arms in all of those directions."). A common sense understanding of the order clerk position and the facts in this case suggest that the need to work above shoulder level is "unlikely and unforeseeable." *Gutierrez*, 844 F.3d at 808 (finding that while "there may be exceptional circumstances where

cashiers have to reach overhead," the facts and circumstances of the case did not present any); [*see also* AR 247].

Moreover, nothing in the DOT's job description of the order clerk job creates an inference that work above shoulder level is required. The DOT states that an order clerk processes orders, which involves tasks such as editing, recording, filing, writing, typing, and entering orders and providing information to customers. DOT 249.362-026. The order clerk may also check customers' credit ratings, dispatch orders, check inventory control, initiate purchase requisitions, compute prices, discounts, commissions, and shipping charges, prepare invoices and shipping documents, recommend the types of packing or labeling for orders, receive and check on customer complaints, confer with personnel regarding shipments, sell additional merchandise, compile statistics, and prepare reports. *Id*. None of these tasks indicate that above shoulder level work or above shoulder level reaching is required to perform the order clerk job. While Plaintiff notes [Jt. Stip. at 16-17] that the DOT indicates that "filing" is one of the duties of an order clerk, Plaintiff has not identified anything in the DOT or the record evidence suggesting that work above shoulder level would be required. DOT 249.362-026. As no apparent or obvious conflict exists between the VE's testimony and the DOT, the ALJ did not err in failing to further inquire into or resolve any conflict. *See Gutierrez*, 844 F. 3d at 808 (an ALJ must "ask follow up questions of a vocational expert when the expert's testimony is either obviously or apparently contrary to the [DOT], but the obligation doesn't extend to unlikely situations or circumstances.").

Accordingly, remand is not warranted on this ground.

### B. Plaintiff's Subjective Symptom Testimony

Plaintiff contends that the ALJ failed to provide sufficient reasons for rejecting her testimony regarding her subjective symptoms and functional limitations. [Jt. Stip. at 17-22, 30-32.]

7

Once a disability claimant produces evidence of an underlying physical or mental impairment that could reasonably be expected to produce the symptoms alleged and there is no affirmative evidence of malingering, the ALJ must offer "specific, clear and convincing reasons" to reject the claimant's testimony about the severity of her symptoms. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (citation omitted); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ must specifically identify the testimony that is being rejected and explain what evidence undermines that testimony. *See Treichler v. Comm'r, Soc. Sec. Admin.*, 775 F.3d 1090, 1102-03 (9th Cir. 2014); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998); *see also Trevizo*, 871 F.3d at 679, n.5 (clarifying that "assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of a claimant's symptoms . . .' and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness") (quoting SSR 16-3p).

Plaintiff alleges that conditions related to her back, neck, shoulders, and elbows limit her ability to work. [AR 205.] In an October 2013 function report, Plaintiff wrote that she wakes up with her leg "totally paralyzed," has difficulty standing, cannot sit for more than 2 hours, has tingling in her legs, feet and arms, has pain in her neck, back, shoulders, and knees, gets a "massive headache" when she lifts her head up, has problems with her hands freezing up and shaking, and is limited to lifting 15 pounds. [AR 225, 230, 232.] She also reported that she was able to maintain her personal care, prepare meals, perform some household chores, feed and walk her dog, grocery shop about three times a week, go out daily, drive during the day, and talk on the phone. [AR 226-29.]

At the hearing in January 2016, Plaintiff testified that she was in "constant pain." [AR 38.] She described nerve pain from her feet to her neck, sciatica pain down her left leg, pain in her abdomen when she bends down, and headaches when she turns or lifts her head. [AR 30, 38-39, 48-49.] She could not lift more than 10

8

pounds, lift her arms above shoulder level, or walk more than about one block. [AR 32, 37, 46.] She could sit for two hours at a time and up to five hours in a day, but she needed to be in a reclined position with her legs elevated. [AR 31-32, 36.] Plaintiff cooked and shopped for herself, but had someone else clean her home. [AR 35.] Plaintiff claimed she had no feeling at the ends of her fingers and could not perform tasks with her hands such as keyboarding for more than a couple of hours. [AR 29, 34, 46-47.]

The ALJ provided specific, clear and convincing reasons for discounting Plaintiff's testimony regarding her subjective complaints to the extent they were inconsistent with the RFC assessed in the decision [AR 16-18.] *See Trevizo*, 871 F.3d at 678; *Smolen*, 80 F.3d at 1284.

The ALJ found that Plaintiff's statements concerning the intensity and persistence of her symptoms and functional limitations were not fully supported by the medical record [AR 17-18.] *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (finding that while medical evidence alone is not a basis for rejecting pain testimony, it is one factor that the ALJ is permitted to consider); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). A review of Plaintiff's medical records supports the ALJ's finding. Although Plaintiff reported periods of increased musculoskeletal pain and symptoms [AR 17, 332, 364, 428], the ALJ noted that conservative treatment with medication helped to alleviate Plaintiff's complaints of pain [AR 17]. *See Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (ALJ may consider effectiveness of pain medication in evaluating allegations of disabling pain). For example, in April 2013, Plaintiff's doctor noted that Plaintiff's musculoskeletal examination revealed normal range of motion, muscle strength, and stability in all areas and Plaintiff's pain score had improved to a "4/10" after she started taking medication. [AR 17, 385-87.] In July 2013, Plaintiff described her pain score as a "3/10" and later that month as a "0/10." [AR 17, 339, 351.] In January 2014, Plaintiff's treating doctor reported normal strength and range of

motion in all areas, despite Plaintiff's reports of back, shoulder and knee pain. [AR 17, 428-29.] While the evidence in the record is subject to more than one interpretation, the ALJ's interpretation thereof was rational and reasonable, and therefore the Court must uphold it. *See Rollins*, 261 F.3d at 857 (court may not "second-guess" an ALJ's reasonable interpretation, provided it is supported by substantial evidence); *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (same).

Further, the ALJ noted that Plaintiff's reported functional limitations conflicted with the opinion of the examining orthopedic surgeon, Dr. Bernabe. [AR 17, 306-11.] On examination, Dr. Bernabe observed Plaintiff had a reduced range of motion in the lumbar spine and positive straight leg raising bilaterally, but Plaintiff was taking pain medication and had an otherwise normal examination. [AR 17, 307-10.] Dr. Bernabe concluded that Plaintiff was capable of performing a range of medium work. [AR 17-18, 310-11.] Although the ALJ assessed a more restrictive RFC, Dr. Bernabe's clinical findings were clearly inconsistent with Plaintiff's subjective complaints. [AR 17-18, 310-11.] Thus, the ALJ reasonably concluded that the objective medical evidence failed to support the degree of symptoms and limitations alleged by Plaintiff in her testimony.

The ALJ also discounted Plaintiff's allegations based on her daily activities [AR 17-18]. *See Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (an ALJ may consider a claimant's daily activities when weighing claimant's testimony); *Burch*, 400 F.3d at 680 (upholding ALJ's rejection of a claimant's credibility based on the claimant's daily activities of cooking, cleaning, shopping, interacting with others and managing her own finances and those of her nephew); *Molina*, 674 F.3d at 1113 ("Even where [daily] activities suggest some difficulty functioning, they may be grounds for discrediting [the claimant's] testimony to the extent that they contradict claims of a totally debilitating impairment."). At the hearing and in her function report, Plaintiff described extreme limitations in functioning. [AR 17-18.]

She claimed she has difficulty standing, is able to walk only one block, and cannot use her hands for activities such as keyboarding for more than 2 hours. [AR 18, 31-32, 47, 225.] She also testified that she cannot sit for more than two hours at a time and needs to sit in a reclined position with her legs elevated. [AR 31, 36.] The ALJ however, found that Plaintiff's function report showed that she was able to engage "in a range of activities which reflects functional abilities at least consistent with [the RFC] assessed." [AR 18.] For example, Plaintiff was able to perform self-care activities, housework (*e.g.*, cooking, laundry, and washing dishes), and errands including driving and shopping in stores several times a week. [AR 17-18, 226-28.] Plaintiff also reported that she walks her dog two times a week and is able to do about one hour of yard work. [AR 32, 226.] As Plaintiff's daily activities were inconsistent with her allegedly disabling symptoms, the ALJ properly discounted Plaintiff's subjective symptom testimony. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (ALJ properly discounted claimant's testimony because the record showed that "she leads an active lifestyle, including cleaning, cooking, walking her dogs, and driving to appointments"); *Burch*, 400 F.3d at 680-81; *Molina*, 674 F.3d at 1113.

Accordingly, the ALJ provided specific, clear and convincing reasons supported by substantial evidence to discount Plaintiff's testimony regarding the nature and severity of her symptoms.

## V. CONCLUSION

For all of the foregoing reasons, **IT IS ORDERED** that the decision of the Commissioner finding Plaintiff not disabled is AFFIRMED.

**IT IS SO ORDERED.**

DATED: November 8, 2018

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE

11